WARREN E. HOOD, Judge Pro Tem.
Clifford Mire, appellant, filed suit against his former employer, Power Rig Drilling Company, Inc., (PRD), appellee, for medical expenses incurred as a result of an injury. The accident was not employment related. His claim was made pursuant to an Employee Health Benefit Plan. From a judgment dismissing his suit, he has appealed. We affirm.
On October 28, 1982, during his tenure as an employee of PRD, appellant suffered a non-occupational injury to his knee. After medical treatment to rehabilitate the knee, appellant was given, by his treating physician, a medical release to return to work. The release was conditioned on the appellant’s wearing a leg brace to support the knee.
Appellant’s employment was subsequently terminated by PRD, pursuant to a company policy which forbids injured employees to return to work unless they obtain a full medical release. There was testimony to the effect that appellant was terminated on December 3, 1982; however, the termination slip in appellant’s employment record is dated December 12,1982. As will be evident from the discussion below, the resolution of this case is the same regardless of which of these two dates is correct.
*229 PRD maintains, for the benefit of its employees and their dependents, a health benefits plan, (hereinafter referred to as “the PRD plan” or “the plan”). The PRD plan is self funded and uninsured. Benefits are paid from a “Benefit Trust Account.”
Under the plan, PRD paid all medical bills submitted by appellant for treatment in connection with the knee injury rendered prior to appellant’s termination as a PRD employee, but refused to pay several bills submitted for treatment rendered after the date of termination. One of these bills was from Dr. Lee Leonard for an office visit on January 21, 1983. The rest were for services rendered and medicines purchased in April and May of 1983.
PRD’s refusal to pay these medical bills was clearly proper according to the terms of the plan. The plan provides that no benefits are payable for expenses incurred after the termination of employment, and specifically provides that an expense is deemed to have been incurred “on the day the purchase is made or the service rendered for which the charge is made.” According to these two provisions, all of the expenses in dispute are excluded.
All but one of the expenses are also excluded under another provision of the plan, according to which any expense incurred more than ninety days from the date of injury is excluded. Dr. Leonard’s bill for the visit of January 21 is the only one which does not fall outside the ninety day period.
Appellant argues, without citation of authority, that to enforce the plan as written would contravene public policy. In particular, it is argued that to enforce the plan would allow PRD to terminate employees for the purpose of avoiding payment of benefits under the plan.
The validity of the PRD plan is governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. secs. 1001 et seq. ERISA mandates that we apply federal law to the exclusion of state law in evaluating the validity of the PRD plan. According to sec. 1002(1), a health and accident benefit plan or fund maintained by an employer, employee organization or both, is one species of “employee welfare plan”. Under sec. 1002(3), an employee welfare plan is one species of “employee benefit plan”. Sec. 1144 then defines the extent to which state law is preempted by ERISA with regard to regulation of employee benefit plans.
Under sec. 1144, the PRD plan is completely exempt from state regulation. Sec. 1144(a) provides that, except as provided in subsection (b) of the same section, all state laws are superseded insofar as they relate to employee benefit plans. Subsection (b)(2)(A) then provides that the statute shall not “be construed so as to relieve any person from any state law which regulates insurance, banking or securities.” Subsection (b)(2)(A) provides that no employee benefit plan or trust under such a plan shall be “deemed to be an insurance company, or other insurer, bank, trust company, or investment company, or to be engaged in the business of insurance or banking for the purpose of any State law purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.” Construing these provisions, the United States Supreme Court has held that, while a state may not directly regulate an employee benefit plan it is permissible under certain conditions for a state to regulate an insured plan indirectly, by imposing requirements on the insurer of the plan, rather than on the plan itself. The court noted however, that an uninsured plan is completely insulated from state regulation, since the plan itself cannot be regulated. Metropolitan Life Insurance Co. v. Massachusetts, — U.S. -, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). The United States Court of Appeals for the Fifth Circuit has squarely held that a state cannot regulate an uninsured employee benefit plan. Children’s Hospital v. Whitcomb, 778 F.2d 239 (5th Cir.1985), citing Metropolitan Life.
The PRD plan is an uninsured plan, and we must therefore look to federal law and the interpretations of federal law by the *230 federal courts to decide whether appellant’s arguments are meritorious.
Appellant’s argument that enforcement of the PRD plan according to its terms would have the effect of allowing PRD to terminate an employee for the purpose of avoiding payment of benefits is clearly without merit. In both the plan document and the plan summary, a copy of which is given to each employee, the employee is advised that, under ERISA, his employment may not be terminated to avoid payment of benefits, and that if he is so terminated, he has the right to seek redress in federal or state court. Thus, any employee who believes that he has been terminated for the purposes of avoiding payment will be able to vindicate his rights. However, there is no evidence in the record to suggest that appellant was terminated to avoid payment of benefits. On the contrary, the only evidence on the subject indicates that appellant was terminated on the basis of a long-standing company policy against allowing people to work without a full medical release.
If this case were being decided in a vacuum, some reasonable minds might conclude that the termination of benefits provisions of the PRD plan contravene public policy simply by virtue of their apparent harshness. Since this matter is governed exclusively by federal law, we must consider the question in light of the pronouncements of the federal courts on the subject. The United States Supreme Court has indicated that great deference is to be accorded the decisions of the parties in constructing employee benefit plans. In Alessi v. Raybestos-Manhattan, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), the Court considered the question of what benefits, once vested, are unforfeitable, in an ERISA pension plan. The Court reasoned that ERISA was intended to leave the decision largely to the parties, and concluded that it was permissible for the plan to contain a provision by which certain worker’s compensation benefits were to be subtracted from employees’ retirement benefits.
Applying this deferential approach, we conclude that the termination of benefits provisions of the PRD plan are valid and enforceable.
The decision of the trial court is affirmed. Costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.